IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 13-cv-02835-WYD-CBS

STEPHEN P. WOLFORD,

Plaintiff,

v.

FLINT TRADING, INC., a North Carolina corporation, and
ENNIS PAINT, INC., a Texas Corporation, d/b/a Ennis-Flint and d/b/a Ennis Traffic Safety Solutions,

Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Flint Trading, Inc. and Ennis Paint, Inc.'s Motion To Dismiss And Compel Arbitration [ECF No. 11]. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On October 17, 2013, plaintiff, Stephen P. Wolford, filed this suit against defendants, Flint Trading, Inc. and Ennis Paint, Inc. (collectively "the Defendants"), alleging the following claims arising out of Wolford's termination and the Defendants' alleged failure to properly pay employment bonuses: (1) violation of the Colorado Wage Claim Act, COLORADO REVISED STATUTES § 8-4-109, *et seq.*; (2) violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; (3) wrongful discharge in violation of public policy; (4) breach of contract; (5) unjust enrichment; (6) conversion; and, (7) promissory estoppel.

On June 8, 1998, defendant, Flint Trading, Inc. (“Flint”), hired plaintiff, Stephen P. Wolford, as a sales representative. Wolford received multiple bonuses and pay increases and was eventually promoted to Regional Sales Manager in 2000. On April 2, 2012, Flint and defendant, Ennis Paint, Inc. (“Ennis”), merged and began doing business as Flint-Ennis. After the merger, Wolford alleges that the Defendants failed to properly pay him bonuses. Wolford inquired as to why he was not receiving his bonuses to multiple persons, including Regional Sales Director, Kirk Ebert. After Ebert notified Wolford that he would not receive a bonus for a specified portion of his sales, Wolford sent an email to Bernadette Young, a Human Resources representative, regarding the Defendants’ failure to pay him bonuses. Wolford alleges that the Defendants terminated him within thirty minutes of him sending the email to Young.

On November 18, 2013, the Defendants filed a Motion To Dismiss And Compel Arbitration [ECF No. 11] arguing that this Court lacks subject matter jurisdiction over Wolford’s claims because the arbitration clause in the Employment Agreement (“the Agreement”) [ECF No. 11-1] between Flint and Wolford mandates that all claims arising out of the Agreement “shall be settled by arbitration . . . ” ECF No. 11-1, p. 9, § 14. Wolford argues that: (1) his claims are not subject to the Agreement’s arbitration clause because he terminated the Agreement by letter on December 3, 2013; and, (2) Ennis cannot demand arbitration because he is not a party to the Agreement.

## ANALYSIS

### A. The Defendants’ Motion To Dismiss And Compel Arbitration [ECF No. 11]

The Defendants request that I compel the parties to arbitrate Wolford’s claims pursuant to the Agreement’s arbitration clause.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., represents the strong federal public policy favoring arbitration. *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (quotation marks and internal citations omitted) ("In 1925, Congress enacted the FAA [t]o overcome judicial resistance to arbitration, and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner"). Pursuant to § 2 of the FAA:

> A written provision in any maritime transaction or a contract evidencing a transaction ***involving commerce*** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(emphasis added). Thus, the FAA governs contracts involving commerce. The FAA "reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1132 (10th Cir. 2004) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 401 n.7 (1967)). Wolford, a Colorado resident, alleges that Flint, a North Carolina for-profit corporation, and Ennis, a Texas for-profit organization, failed to properly pay him employment bonuses and terminated him in violation of public policy. Wolford's claims arise from the Agreement executed by Flint and himself, which undoubtedly involves interstate commerce. Thus, the Agreement's arbitration clause is governed by the FAA.

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination

unless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). The Agreement does not contain any language evidencing the parties' intent to arbitrate the issue of arbitrability. Thus, I must determine whether to compel arbitration of all or any of Wolford's claims against the Defendants. In resolving this question, I follow the three part inquiry set forth by the United States Court of Appeals for the Tenth Circuit in *Cummings v. FedEx Ground Package Sys.*, 404 F.3d 1258, 1261 (10th Cir. 2005). In *Cummings*, the Tenth Circuit stated:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Cummings*, 404 F.3d at 1261 (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). A broad arbitration clause is one that "refer[s] all disputes arising out of a contract to arbitration . . . " *McDonnell Douglas Finance Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (citations omitted). In contrast, a narrow arbitration clause limits arbitration to specific disputes. Here, the Agreement's arbitration clause states, in pertinent part, "[a]ny controversy or claim arising out of or relating to this Agreement, or its breach, shall be settled by

arbitration in the City of Greensboro, North Carolina in accordance with the then governing rules of the American Arbitration Association." ECF No. 11-1, p. 9, § 14. Such language is consistent with a broad arbitration clause and I will therefore apply the presumption of arbitrability applicable to broad arbitration provisions. *See Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (holding that an arbitration clause covering "all disputes or controversies arising under or in connection with this Agreement" is "the very definition of a broad arbitration clause as it covers not only those issues arising under the employment contract, but even those issues with any connection to the contract").

**1. Initial Matter**

Wolford argues that the Defendants' actions entitle him to exemplary damages. Wolford then argues that because he is entitled to exemplary damages and because Colorado state law precludes an award of exemplary damages in arbitration proceedings, arbitration is inappropriate. *See* COLORADO REVISED STATUES § 13-21-102(5) ("Unless otherwise provided by law, exemplary damages shall not be awarded in administrative or arbitration proceedings, even if the award or decision is enforced or approved in an action commenced in court"). I disagree.

The plaintiff in *Willingham v. Omaha Woodmen Life Ins. Soc'y*, 2009 U.S. Dist. LEXIS 73411 (D. Colo. Aug. 19, 2009), posited an argument similar to Wolford's. Specifically, the plaintiff argued that "because he is requesting exemplary damages on the bad faith claim, and because C.R.S. § 13-21-102(5) prevents arbitration tribunals from awarding exemplary damages, he is entitled to have at least the bad faith claim heard by a jury." 2009 U.S. Dist. LEXIS 73411 at *2. While noting that the FAA

governed the arbitration clause at issue, the Court stated that the plaintiff failed to provide any authority supporting his position and held that "the Plaintiff is free to pursue all his claims and requested remedies, including exemplary damages, in an arbitral forum." *Id*. at *4. The court in *Pyle v. Securities U.S.A., Inc.*, 758 F. Supp. 638, 639 (D. Colo. Mar. 8, 1991), came to a similar conclusion when it stated that "[b]ecause there has been no showing that the parties agreed that Colorado arbitration law should govern in this FAA action, Colo. Rev. Stat. § 13-21-102(5) does not apply." The FAA governs the Agreement's arbitration clause. Therefore, Colorado state law will not dictate the outcome of any issue regarding arbitration under the Agreement. *Cf*. *Volt Info. Scis. V. Bd. of Trs*. 489 U.S. 468, 479 (1989) ("Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . "). As such, Wolford's request for exemplary damages does not preclude arbitration.

**2. Issues**

Upon reading the parties' briefs, three issues regarding arbitration are before me: (1) whether the Agreement's arbitration clause survived Wolford's termination of the Agreement on December 3, 2013; (2) if the arbitration clause survived, what claims are arbitrable; and, (3) whether Ennis, as a non-signatory of the Agreement, can invoke the Agreement's arbitration clause.

**a. Whether the Arbitration Clause Survived Wolford's Termination of the Agreement**

Pursuant to § 18(a) of the Agreement, "[t]he Employee or the Company may voluntarily elect to terminate this Agreement at any time provided that the party electing to terminate must deliver to the other party fifteen (15) days written notice of such

termination." ECF No. 11-1, p. 10. § 18(a). On November 20, 2013, Wolford sent a letter to Flint stating that "I, Stephen P. Wolford, personally and through my counsel, do hereby provide my Notice to Terminate The Agreement in writing to the Company's principal office, effective in fifteen (15) days of this mailing, on or before December 3, 2013." ECF No. 13-3, p. 1, ¶ 1. Wolford also states in the letter that due to his express termination of the Agreement, "the Arbitration Clause in Section 14 shall be null and void." *Id*. at ¶ 2. Wolford argues that his November 20, 2013 letter terminated the Agreement and therefore he is not bound by the Agreement's arbitration clause. I disagree.

The Tenth Circuit has stated that:

> Under the federal common law of arbitrability, ***an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption***: ***"In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."*** *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255, 51 L. Ed. 2d 300, 97 S. Ct. 1067 (1977). Thus, when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired. *See id.* (holding that claims for severance pay by workers who were discharged after their collective bargaining agreement expired were subject to the continuing force of the prior arbitration clause). ***The presumption in favor of continuing arbitrability, however, disappears in either of two situations: first, if the parties express or clearly imply an intent to repudiate post-expiration arbitrability, and second, if the dispute cannot be said to arise under the previous contract***. *See id.* at 254-55; *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1026 (10th Cir. 1990); *see also Primex Int'l Corp. v. Wal-Mart Stores, Inc.*,

> 89 N.Y.2d 594, 679 N.E.2d 624, 626, 657 N.Y.S.2d 385 (N.Y. 1997) (holding that commercial disputes relating to two expired contracts were arbitrable, but any portion of the disputes relating to the last contract between the parties, which lacked an arbitration clause, was not arbitrable).

*Riley Mfg. Co. v. Anchor Glass Container Corp*., 157 F.3d 775, 781 (10th Cir. 1998) (emphasis added). Pursuant to the Tenth Circuit's statement in *Riley*, I must proceed under the presumption that the Agreement's arbitration clause survived Wolford's termination of the Agreement. There are two ways to defeat this presumption: (1) there must be evidence that the parties expressly or clearly implied an intent to repudiate the arbitration clause; and, (2) the dispute at issue does not arise under "the previous contract." *Id*. Because there is only one contract at issue, *i.e.*, the Agreement, the second ground for defeating the presumption does not apply in this case. Thus, in order to defeat the presumption that the arbitration clause survived Wolford's termination of the Agreement, there must be evidence that the parties expressly or clearly implied an intent to repudiate the arbitration clause.

**i. Intent to Repudiate the Arbitration Clause**

The law under *Riley* is clear, the "parties" must expressly indicate or clearly imply their intention to repudiate the arbitration clause. This language contemplates action by both parties. Here, there is only unilateral action: Wolford's express repudiation of the arbitration clause. There is no evidence before me that the Defendants responded to Wolford's repudiation by expressly indicating their intent to repudiate the arbitration. In fact, there is no evidence before me that indicates the Defendants even responded to Wolford's termination letter. Thus, under *Riley*, the parties did not expressly indicate or clearly imply their intent to repudiate the arbitration

clause. Therefore, the arbitration clause survived Wolford's termination of the Agreement.

This conclusion does not reward the Defendants' silence. Whether the Defendants' silence was calculated or not, their present opposition to repudiation sheds some light on their probable response to Wolford's termination letter had they indeed responded. Further, Flint drafted the Agreement and chose to include an arbitration clause. This directly evidences Flint's desire to avoid judicial proceedings. Mindful of the strong federal policy favoring arbitration, this is an appropriate conclusion. *Moses H. Cone Mem'l Hops. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (citations omitted) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").

**b. Arbitrable Claims**

"[T]he policy of the Arbitration Act requires a liberal reading of arbitration agreements . . . " *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23 n.27. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . " *Id*. at 24-25. As previously noted, the Agreement's arbitration clause is broad. "When a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated." *Brown*, 220 F.3d at 1184. With this understanding, I turn to whether Wolford's claims are arbitrable.

The substance of Wolford's seven claims is that the Defendants failed to pay bonuses and commissions owed to Wolford and that the Defendants' termination of

Wolford is against public policy because it was in retaliation for Wolford questioning the Defendants' failure to pay the bonuses and commissions. It is clear that Wolford's termination arises out of the Agreement. Regarding bonuses and commission, Wolford argues that the "commission and bonus compensation plans were not contemplated by The Agreement in 1998, they in no way arise out of The Agreement which provides Mr. Wolford with a base salary and they say nothing about bonuses or commissions in any way." ECF No. 13, p. 8, ¶ 3. I agree with Wolford that the Agreement does not expressly mention bonuses or commission. However, that fact does not preclude a finding that a dispute regarding bonuses and commission is not arbitrable. Bonuses and commission are part and parcel to an employee's salary, especially in sales. Further, the Agreement provides that Wolford's salary would be renegotiated every year. ECF No. 11-1, p. 4, § 3 / p. 5, § 3. Wolford's bonuses and commission on sales is undoubtedly included in these annual renegotiations. Thus, I find that the any claim arising from the dispute regarding Wolford's bonuses and commission "touch[es]" the Agreement and is therefore arbitrable. *Brown*, 220 F.3d at 1184. I therefore conclude that all of Wolford's claims are arbitrable under the Agreement.

**c. Whether Ennis, as a Non-Signatory of the Agreement, Can Invoke the Agreement's Arbitration Clause**

Arbitration arises from a contract between parties, and therefore "a party cannot be forced to arbitrate any issue he has not agreed to submit to arbitration." *Commun. Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1300 (10th Cir. 2012) (citations omitted). However, "[a] non-signatory to an arbitration agreement may be bound to arbitrate under general contract law and agency principles." 31-903 MOORE'S FEDERAL PRACTICE – Civil § 903.06.

There is no dispute that Wolford and Flint are the only signatories to the Agreement. The Defendants argue that Ennis, a non-signatory to the Agreement, may invoke the Agreement's arbitration clause under the doctrine of equitable estoppel. This Court recognizes the doctrine of equitable estoppel as a vehicle to compel non-signatories to arbitrate with signatories. *Adams v. ModernAd Media*, LLC, 2013 U.S. Dist. LEXIS 25263, *14 (D. Colo. Feb. 25, 2013); *GATX Mgmt. Servs. LLC v. Weakland*, 171 F. Supp. 2d 1159, 1166-67 (D. Colo. Nov. 14, 2001); *Cherry Creek & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F. Supp. 2d 1091, 1098-99 (D. Colo. Dec. 24, 2001). In *Cherry Creek Card & Party Shop, Inc.*, Judge Babcock relied on a case from the United States Court of Appeals for the Second Circuit to explain equitable estoppel in the arbitration context. Judge Babcock stated:

> As the Second Circuit explained, there are two theories of equitable estoppel in the arbitration context. First, courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement. *SeeThomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 778 (2d Cir. 1995). Second, courts have bound a signatory to arbitrate with a non- signatory "at the nonsignatory's insistence because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 779 (internal quotation marks omitted) (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) (quoting *McBro Planning & Dev. Co. v. Triangle Elec. Const. Co.*, 741 F.2d 342, 344 (7th Cir. 1984)).

176 F. Supp. 2d at 1098. Judge Babcock further stated that "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the

nonsignatory and one or more of the signatories to the contract." *Id*. Wolford alleges all seven of his claims against both Flint and Ennis. All seven of Wolford's claims arose after Flint and Ennis merged and began doing business as Ennis-Flint. In fact, according to Wolford's allegations in his Complaint [ECF No. 1], the merger created the conflict which forms the basis of this lawsuit. As such, I find that Wolford alleges "substantially interdependent and concerted misconduct" by both Flint and Ennis such that Ennis, a non-signatory to the Agreement, may enforce the Agreement's arbitration clause and join in the arbitration. *Cherry Creek Card & Party Shop, Inc*., 176 F. Supp. 2d at 1098.

**B. Dismissal or Stay**

Under the FAA, when a district court decides an issue is "referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . " 9 U.S.C. § 3. In their Motion To Dismiss And Compel Arbitration [ECF No. 11], the Defendants "request that the Court ***dismiss this case*** and order arbitration of Wolford's claims." ECF No. 11, p. 7, ¶ 3. In the Defendants' Reply To Plaintiff's Response To Defendants' Motion To Dismiss And Compel Arbitration [ECF No. 14], the Defendants "ask the court to ***dismiss or stay this case*** and compel plaintiff to arbitrate his claims." ECF No. 14, p. 8, ¶ 4 (emphasis added). While the Defendants' original request was that I dismiss this action, they subsequently request that I dismiss or stay this action. The FAA's text is clear, upon a party's application for a stay, I must stay the action until arbitration has been held in accordance the parties' agreement. Thus, this action is STAYED until arbitration concludes.

## CONCLUSION

After careful consideration of the matter before this Court, it is

ORDERED that the Defendants' Motion To Dismiss And Compel Arbitration [ECF No. 11] is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** to the extent that the Defendants seek an Order from this Court compelling arbitration of all Wolford's claims and a stay pending arbitration. As such, it is

FURTHER ORDERED that the parties **SHALL SUBMIT** Wolford's claims to arbitration in Greensboro, North Carolina, and such arbitration **shall proceed in accordance with the governing rules of the American Arbitration Association**. It is

FURTHER ORDERED that this action is **STAYED** until arbitration concludes.

The motion is **DENIED** to the extent that the Defendants seek dismissal of this action.

Dated: July 30, 2014.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge